293 P.2d 928

**In the Matter of O. Ellis EVERETT, a Member of the State Bar of Arizona.**
**No. 6099.**

Supreme Court of Arizona.
Feb. 28, 1956.

T. J. Byrne, Prescott, for the State Bar.

H. Karl Mangum, Flagstaff, Arthur M. Johnson and W. H. Chester, Phoenix, for respondent.

PER CURIAM.

This disciplinary proceeding directed against respondent, O. Ellis Everett, a member of the State Bar of Arizona, stems from the following letter, admittedly written by respondent on August 14, 1950, to his client, one Francis Platt, of Salt Lake City, Utah, viz.:

"A man has offered me One Thou-. sand Five Hundred ($1,500.00) Cash for the Compressor which I had trucked in. It cost me Fifty ($50.00) Dollars to have it brought in. So, if you will have the enclosed Bill Of Sale properly executed and return it to me, I will send you One-half of the One Thousand Five Hundred ($1,500.00) Dollars minus my Fifty ($50.00) Dollars which will be Seven Hundred ($700.00) Dollars *net to you.*

"Please expedite this Business because I do not want to miss the Sale which will give us a little money. * * *" (Emphasis supplied.)

According to complainant Platt's version of the affair he subsequently learned from the purchaser of the compressor that $2,000 had been paid for it, and being unable to effect a settlement with respondent he reported the matter to the State Bar of Arizona. This complaint was referred to Local Administrative Committee for District No. 1, and on June 8, 1951 the following charges of professional misconduct were made against respondent, viz.:

"Item 1:—That you advised the complainant, representative of your said clients, by letter dated August 14, 1950, that you had been offered $1,500.00 in cash, for a compressor, which was for sale by reason of the suit above mentioned and proceedings therein, when in truth and in fact, you were offered and subsequently received $2,000.00 for said compressor.

"Item 2:—That you retained $500.-00 of the $2,000.00 payment above described, without any authorization so to do from your clients."

Chronologically the proceedings against respondent were as follows:

| | |
|---|---|
| June 15, 1951 | Preliminary hearing, |
| August 22, 1952 | First order to show cause issued, |
| September 16, 1952 | Formal hearing thereon, before three committee members but no decision made, |
| * * * * | * * * * * |
| July 21, 1954 | New complaint (on identical charges) filed by new chairman of administrative committee, and another order to show cause issued, |
| September 13, 1954 | Hearing held, |
| September 22, 1954 | Findings of fact and recommendations as to discipline made, signed by five members of committee, |
| October, 1954 | Administrative committee record lodged with State Bar Secretary, |
| November 4, 1954 | Respondent notified of their finding, |
| June 11, 1955 | Hearing before Board of Governors, and matter decided same date, |
| July 6, 1955 | Record certified to this court. |

It will be noted that more than four years elapsed between the initiation of this proceeding and the filing of the record thereof with this court. This delay on the part of the Local Administrative Committee, in our opinion was inexcusable and constitutes a reflection on the State Bar of Arizona. Certainly it was not in keeping with either the letter or the spirit of our rules governing such matters. Rule 35(a) provides:

" * * * the committee shall proceed with the hearing unless for good cause shown they shall continue the hearing. No continuance shall be for a longer period than thirty days nor for periods aggregating more than ninety days without the approval of this court."

and Rule 35(d) provides:

"Upon conclusion of the formal hearing, the committee shall promptly determine whether the charges shall be dismissed or the member disciplined."

Until the matter was lodged here we were not even aware that such a proceeding was pending. This court at no time had approved of any continuances in the proceedings below. It appears that this delay was due in part to the fact that the chairman in charge of the first hearing moved away. However, the matter "slumbered" for a period of twenty-two months with the local administrative committee, and counsel for respondent had a hard time convincing the committee, then acting, that the formal hearing required under the rules had already been held. His motion to dismiss the second proceeding for undue harassment was denied. Finally the matter was decided upon written documents admitted in evidence and the testimony given by respondent at the prior hearing held on September 16, 1952, coupled with the depo-

sition of complainant. In the meantime however three new members had been added to the committee and necessarily their decision was based solely upon the written record.

It was the unanimous decision of the five members of the Administrative Committee:

"(11) That Respondent has been guilty of professional misconduct by being dishonest, and by retaining and converting to his own use funds belonging to his client; * * *."

and they recommended that the respondent "be suspended from his right to practice law." The Board of Governors "by a vote of a majority of the Board" approved the above-quoted findings of the Administrative Committee and recommended that respondent "be indefinitely suspended from the practice of law".

While we appreciate the labors of the Committee and the Board of Governors and are sure that they all acted in the matter according to their best judgment, nevertheless in disciplinary proceedings in the final analysis it is the duty of this court to sit as triers of both fact and law. In re Sweeney, 77 Ariz. 138, 267 P.2d 1074, and cases therein cited. Hence we are not bound by their findings but must determine for ourselves whether the evidence in a given case is so "clear and convincing" as to warrant disciplinary action.

When we look to the merits of the charge it at once becomes apparent that a question of veracity is involved. Who are we to believe, Platt or respondent? Francis Platt stands as the complainant and the accuser, and upon his word largely depends any censure of respondent. Apparently none of the committee or Board were brought face to face with the accuser or had personal knowledge of Platt's reputation for honesty and integrity. At least there is nothing in the record before us on this point. Nor was he ever subjected to the searching scrutiny of cross-examination. Nevertheless, evidently his version of what occurred, as given in the deposition taken in Salt Lake City by Platt's own attorney, was fully accepted without question, even though he was impeached as to certain of his statements on minor matters by other irrefutable evidence.

Respondent gave this version of the affair: back in 1946 he was employed through complainant as an attorney to foreclose a mortgage covering certain mining properties and machinery at an agreed fee of $1500; during the course of this foreclosure unexpected complications arose that he was asked to handle and it was then agreed that his fee should be increased to $3,000. These matters were successfully handled, judgment was entered, and the property foreclosed upon and sold at sheriff's sale. The property was bid in by Francis Platt, who then became the owner of the legal title thereof. It had been agreed that the sum due respondent for attorney fees should be paid from the sale of this foreclosed property. The matter dragged on and his fees were not paid.

Finally arrangements were made for respondent to sell the machinery, more in the capacity of a broker than as a lawyer, and divide the net proceeds therefrom between them after all expenses in connection with the sale were paid. Respondent's legal right to charge for such services need not be determined as we are only concerned with the bona fides of his claim, insofar as it has a bearing on his honesty in the matter. A buyer (Mr. Freericks) was found and a compressor sold to him for $2,000. This was when the letter of August 14, 1950, supra, was written, and respondent stoutly maintains that very shortly thereafter in a telephone conversation with Platt in Salt Lake City a full disclosure of all details was made. Platt flatly denies any such telephonic conversation took place. The only other evidence upon this point is the fact that the records of the local telephone company showed no such call, between the parties, at any time during the months of either August or September, 1950. Of the gross sum of $2,000 it is not controverted that the sum of $262 was paid to one Leonard for storage, etc., and $238 deducted by respondent as a brokerage fee for handling the sale. Platt had agreed to pay the hauling charge for bringing the compressor to Kingman, which left a net amount, under Everett's theory, of $700. This sum was promptly remitted to Platt upon receipt of the necessary bill of sale from him to Freericks.

Thereafter respondent endeavored without success to collect the balance of his attorney fees from Platt. Some time later Platt accused him of holding out $500 on the sale, and impliedly threatened him with a complaint for disbarment if he did not promptly remit same. Instead of complying with complainant's demand respondent threw down the gauntlet by bringing suit in the Mohave County Superior Court for the balance of fees due him. Platt counterclaimed for the $500 in controversy. The case was tried before the court with both parties present and testifying. Judgment was entered in favor of Everett and thereafter satisfied. It seems to us this judicial determination involving the very heart of the instant controversy was not given the weight it warranted by those who sat in judgment upon respondent in these proceedings.

Respondent's reason for not making a full disclosure to Platt in the letter advising that the compressor had been actually sold to the buyer for $2,000, instead of the $1,500 as stated, was Platt's previous statement to him:

> " * * * that he wasn't interested in anything except what he was going to get out of it. Any expense of selling it would be up to me and all he wanted was a *net offer to him*." (Emphasis supplied.)

While the letter did not set forth the details as it might have done it is to be noted that it does use the words *"Net to you"*. Further bearing out respondent's version we observe that in a letter dated September 29, 1950 from Platt to Everett, in speaking

of his unfinished business in Kingman it is stated:

"All that is necessary is *to tell me how much I am to get out of any offer,* and then I can know where I stand." (Emphasis supplied.)

It will be recalled that it was through Freericks (purchaser of compressor) that Platt first learned that $2,000 had actually been paid to respondent. Yet it was Everett who had sent Freericks to see Platt about the prospective sale of other machinery. It seems that if respondent had anything to conceal about the prior transaction he would not have arranged for them to meet. To us this incident seems quite significant.

The evidence upon which both the committee and Board of Governors acted is not, to our minds, at all clear and convincing. With due respect to them we can only say that respondent's version of the affair "rings true" to us. In reaching this conclusion, which involves evaluating among other matters the credibility of respondent, we are admittedly influenced somewhat by the fact that insofar as we are advised respondent's whole career has been that of an honorable and loyal citizen and a respected member of society. He first became a member of the Bar in the State of Ohio in the year 1932, and was admitted to practice in Arizona in the year 1939. Except for this charge of professional misconduct, his record as a practicing attorney has been free from any stigma whatsoever. Furthermore, our attention is called to the fact that respondent is now a Colonel in the Air Force Reserves, which rank is not ordinarily attained except by those who render years of faithful service in the armed forces of their country.

For the future guidance of those charged with handling disciplinary matters there are two propositions deserving of comment. First, we want it known that we disapprove of long delays such as occurred here, in bringing to a conclusion charges against a member of the bar for professional misconduct. It is most unfair to the accused as well as bringing our disciplinary procedure into disrepute. Second, it appears from the record that in the taking of the deposition of the complainant in Salt Lake City the Local Administrative Committee saw fit to designate Mr. Platt's personal attorney to represent the State Bar at said hearing. Counsel for respondent were unable to attend and the end result was a one-sided inquiry. In the Committee's *search for the truth* good judgment should have dictated that if one of the members of the Arizona Bar were unable to attend and conduct the inquiry that some disinterested attorney, other than complainant's own counsel, should have been selected to perform this service. Cf. In re Sweeney, supra.

For what we consider to be no more than a poorly drawn letter the respondent has already suffered embarrassment, humiliation and worry far beyond his deserts.

The charges of professional misconduct are ordered dismissed.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.

WINDES, J., having disqualified, took no part in the determination of this matter.