652 P.2d 1014

**In the Matter of a Member of the State Bar of Arizona, Pete Manuel RUBI, Respondent.**

**No. SB–242.**

Supreme Court of Arizona,
En Banc.

Sept. 15, 1982.

Rehearing Denied Oct. 26, 1982.

Christoffel, Ross & Zickerman by Dean C. Christoffel, Tucson, for petitioner.

Renaud, Cook & Videan by J. Gordon Cook, Phoenix, for respondent.

ORIGINAL PROCEEDING FOR
DISCIPLINARY ACTION

HOLOHAN, Chief Justice.

This is an original proceeding for disciplinary action against a member of the State Bar of Arizona, Respondent Pete Manuel Rubi. The proceeding was initiated before the local Administrative Committee of the State Bar. Following an evidentiary hearing, the committee made findings of fact and conclusions ("findings"), and recommended that Respondent be suspended from the practice of law for 10 years and one day. Subsequently, the matter was reviewed by the Disciplinary Board of the State Bar. The Board rejected certain findings of fact and one conclusion as not supported by clear and convincing evidence and recommended a reduced suspension period of one year. This court heard the matter pursuant to Rule 36(d), Rules of the Supreme Court, 17A A.R.S.

**492**

We are guided by certain well-established principles in considering a disciplinary proceeding against an attorney for professional misconduct. Evidence of misconduct must be clear and convincing to justify disciplinary action, although it need not be beyond a reasonable doubt. *In re Swartz,* 129 Ariz. 288, 630 P.2d 1020 (1981). The recommendations and findings of fact of the local Administrative Committee and the Disciplinary Board are entitled to serious consideration, *In re Lurie,* 113 Ariz. 95, 546 P.2d 1126 (1976), especially where the credibility of witnesses who testified in person before the committee is at issue. Of course this court has the responsibility of determining the ultimate facts in disciplinary matters. *In re Moore,* 110 Ariz. 312, 518 P.2d 562 (1974).

An examination of the record in this matter indicates that Respondent represented Luis Estrada, the complainant herein, in a dissolution proceeding in the Pima County Superior Court. Estrada, an illiterate laborer over 60 years of age, had been Respondent's friend for many years prior to the dissolution action. As part of the dissolution decree, Estrada was ordered to pay his former wife spousal maintenance of $75.00 per month. Since Estrada did not know the whereabouts of his former wife, he began making payments to Respondent, believing Respondent would make appropriate arrangements.

Estrada paid Respondent $37.50 twice a month, without fail, from November 10, 1977, through March 16, 1979. At no time subsequent to November 10, 1977, did Respondent pay over Estrada's money to the Family Support Unit of the Superior Court Clerk's Office or to Estrada's ex-wife. Neither did he maintain Estrada's money in a client's trust account. Rather, until July, 1978, Respondent kept the money in a lockable filing cabinet in an office he shared with another attorney. In July, 1978, $675.00 in accumulated payments was stolen from the filing cabinet by one of Respondent's employees. Thereafter Respondent placed the payments in his own personal checking account at Valley National Bank. At the time the payments stopped in March, 1979, Respondent had received $1,275.00 from Estrada.

Estrada and Respondent had some contact over the next few months concerning the return of Estrada's money. In August or September, 1979, Estrada asked a friend to write a letter to Respondent on his behalf requesting the return of his money. Respondent received the letter but did not reply. Finally, on November 9, 1979, Estrada went to the Pima County Bar office for assistance in recovering his money.

Robert Finn, on behalf of the Pima County Bar Association, began collection procedures against Respondent on November 20, 1979. Respondent contested the amount due Estrada, stating that his calculations indicated a sum of $1,150.00 was due. After several telephone conversations concerning the amount due, Respondent acknowledged on January 10, 1980, that the amount he had received from Estrada was $1,275.00. It was not until January 24, 1980, that partial payment of $700.00 was made. Respondent paid the balance of $575.00 on approximately February 11, 1980.

Respondent denied that he used any of Estrada's funds on deposit in his bank account, but the bank records showed several instances in which he did use Estrada's money. That is, the account balance fell below the amount of Estrada's money that had been deposited in the account. In fact, during nine different months the account balance dropped below the amount that Respondent owed Estrada.

Respondent filled out a State Bar Questionnaire on trust accounts and returned it as required by Rule 29(f)(3). He stated in his Questionnaire that he had read Rule 29(f), Rules of the Supreme Court, D.R. 9-102, Arizona Code of Professional Responsibility, and the Trust Account Guidelines of the State Bar and was in full compliance therewith. He stated that he maintained a separate trust or escrow or bank account for funds held in a fiduciary capacity, including his clients' funds, but that at the time he had no such accounts. The record reveals that these statements were false.

Respondent raises two questions: (1) Is the Disciplinary Board's recommended discipline of a one-year suspension too harsh as a matter of law? (2) Did the Board erroneously reject Respondent's application for presentation of additional evidence?

Respondent's first question involves whether there is clear and convincing evidence to support certain findings of fact and conclusions of the local Administrative Committee which were upheld by the Disciplinary Board. In this regard Respondent contests the following findings of fact: that Respondent denied having had trust accounts for client's money in the past; that Respondent failed to maintain records showing the total amount of payments made by Estrada; that Respondent misled Estrada into believing that Respondent would handle disbursements of his payments to his ex-wife through the Family Support Unit of the Superior Court Clerk's Office; that Respondent acknowledged to Finn a visit by Estrada in April, 1979, to ask for his money; that Respondent and the witnesses he produced on his behalf lacked credibility; that Respondent avoided repaying Estrada until he learned that Estrada could prove the payments by producing copies of the receipts; and that Respondent attempted to mislead the committee by voluntarily turning over to the committee only the first page of his bank statement, knowing that the "low balance" figure appears at the end of the statements. Respondent also contests certain conclusions reached by the Local Committee and Disciplinary Board. He argues that the conclusions are not based on clear and convincing evidence.

We find it unnecessary to enter into an extensive analysis of the challenged findings and conclusions where, as here, the uncontested facts amply establish professional misconduct which warrants the recommended discipline of suspension for one year.

■ Considering only the uncontested findings, the following conclusions are justified by clear and convincing evidence:

(1) Respondent made false statements to the State Bar in violation of D.R. 1–102(A)(4).

(2) Respondent failed to reveal information to the State Bar as required by Rule 29(f), Rules of the Supreme Court, 17A A.R.S. in violation of that rule and D.R. 7–102(A)(3).

(3) Respondent initially failed to place funds of a client in a bank account and when he did so he commingled those funds with his own in violation of D.R. 9–102(A)(1) and (2).

(4) Respondent failed to maintain complete records of the handling, maintenance and disposition of a client's funds which came into his possession, in violation of D.R. 9–102(B)(3).

(5) Respondent failed to deliver the funds promptly although requested to do so by letter in August or September, 1979, in violation of D.R. 9–102(B)(3) and (4), and Rule 29(b)(6), Rules of the Supreme Court, 17A A.R.S.

(6) Respondent converted funds of his client to his own use in violation of D.R. 1–102(A)(3).

■ Absent extenuating circumstances, violations of this nature would warrant disbarment of the violator. *In re Couser,* 122 Ariz. 500, 596 P.2d 26 (1979); *In re Moore,* 110 Ariz. 312, 518 P.2d 562 (1974); *In re Campbell,* 108 Ariz. 200, 495 P.2d 131 (1972). The objective of disciplinary proceedings against an attorney is to protect the public and not to punish the offender. *In re Lurie, supra; In re Kastensmith,* 101 Ariz. 291, 419 P.2d 75 (1966). Because it appears that this was an isolated incident and restitution was made in full, it is unnecessary to disbar Respondent for the protection of the public. However, even isolated instances of such conduct must be deterred.

Respondent came into possession of Estrada's money in the first place because he was attempting to provide a convenience to his client. This does not, of course, relieve him of the duty to manage these funds according to the standard of professional responsibility imposed upon all members of the State Bar of Arizona.

Respondent questions the Disciplinary Board's action in denying his application to present additional evidence. The evidence Respondent sought to present consisted of testimony that his net worth was considerable, that his reputation in the legal community was good, and that he had rendered substantial charitable services in the past.

Rule 36(a), Rules of the Supreme Court, 17A A.R.S. states that an application for presentation of additional evidence *shall* be supported by affidavit stating the reason why the evidence was not presented to the local Administrative Committee. Respondent has not provided us with any reason why such evidence was not presented to the committee. Even if we assume that such a reason existed, we are compelled to find that the Disciplinary Board acted properly in denying Respondent's application.

The deposition of Richard L. Keefe, a former associate of Respondent, was introduced into evidence. Keefe testified that Respondent's reputation in the legal community was good. The record contains no evidence to the contrary. Respondent's reputation was considered in our determination of an appropriate disciplinary measure. Additional evidence to the same effect would be merely cumulative and would have no bearing on the result.

Respondent classifies as "more important" his desire to show his net worth. His affluence, he argues, shows that he did not need to use Estrada's money for his own benefit. Respondent would have us believe that it was mere sloppiness that caused him to commingle his client's funds with his own, and it was inattention to trivial detail that caused him to convert his client's funds to his own use. Since his motive was not a desire to use his client's funds, Respondent suggests that protection of the public need not be a concern here as it was in *In re Campbell, supra,* and *In re Moore, supra.*

The respondents in *Campbell* and *Moore* had converted clients' funds to their own uses because of economic pressures upon them. We stated our concern that:

"... if similar economic pressures were placed upon [them] again, the same mis-conduct might result." 108 Ariz. at 201, 495 P.2d at 132.

We do not read these cases to suggest that it is more ethical to convert a client's funds to one's own use if one does not need the money. Such a suggestion is preposterous. The public requires protection from attorneys' extreme sloppiness and inattention just as it does in cases of purposeful conversion.

It is ordered that Respondent, Pete M. Rubi, be suspended from the practice of law in this state for one year commencing upon the issuance of the mandate. It is further ordered that Respondent pay costs in the sum of $2,116.63 pursuant to Rule 37(g), Rules of the Supreme Court, 17A A.R.S. Respondent is directed to comply with the provisions of Rule 37(h), Rules of the Supreme Court, 17A A.R.S.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ.