713 P.2d 1225

**In re the Matter of Pete Manuel RUBI, Justice of the Peace, Pima County, Arizona.**

**No. JUD–6.**

Supreme Court of Arizona, In Banc.

Dec. 17, 1985.

O'Dowd, Burke & Lundquist, P.C. by Bruce A. Burke, Tucson, for Comm'n on judicial qualifications.

Renaud, Cook & Videan by J. Gordon Cook, Phoenix, for respondent.

CAMERON, Justice.

This is a proceeding for judicial discipline of the respondent Pete Manuel Rubi, Justice of the Peace, Pima County. We have jurisdiction pursuant to Arizona Constitution, art. 6.1 § 4, and Rule 15, R.Proc. Comm.Jud.Qual., 17A A.R.S.[1]

We must answer three questions on appeal.

1. Did the Judicial Qualifications Commission have jurisdiction to consider the matter?

2. Was respondent in violation of Arizona's code of judicial conduct?

3. If the respondent did violate the code of judicial conduct, what is the appropriate sanction?

The facts necessary for a determination of this matter are as follows. Pete M. Rubi was admitted to the practice of law in the State of Arizona in 1951. In 1980, he

---

**1.** This matter was submitted on 3 May 1984, and was on that day assigned to another member of this court for the drafting of an opinion. On 19 September 1985, a draft opinion was circulated to the members of the court. The majority of the court disagreed with the draft opinion. On 1 October 1985, the matter was assigned to this author for the drafting of an opinion which was circulated to the court on 30 October 1985.

decided to run for justice of the peace in Pima County. In September, he was nominated at the Democratic party primary. He did not have opposition in the general election and the Pima County Board of Supervisors on 21 October 1980, appointed him to fill the vacancy which had occurred because of resignation. He was elected in the general election of 1980 and was re-elected in 1984.

During respondent's first term of office, he was suspended from the practice of law by this court for commingling and conversion of client's funds and filing a false trust account questionnaire. The conversion and commingling occurred while respondent was an attorney and prior to his assumption of judicial office. *See In re Rubi*, 133 Ariz. 491, 652 P.2d 1014 (1982). A justice of the peace is not required to be a lawyer.

The Judicial Qualifications Commission also investigated respondent's conduct pursuant to art. 6.1 of the Arizona Constitution. The Judicial Qualifications Commission, by a five to four vote, declared that the commission had jurisdiction, found that respondent's actions constituted conduct "prejudicial to the administration of justice that brings the judicial office into disrepute", Ariz. Const. art. 6.1, § 4, and recommended censure. Respondent contested the findings of the commission.

## 1. WAS THERE JURISDICTION?

■ The majority in its Conclusions of Law stated:

4. Although the conduct of Pete M. Rubi, which gave rise to this inquiry, occurred before he became a justice of the peace, (*save and except for his testimony before this Commission*), nonetheless, the nature of his conduct and of the violations which occurred are prejudicial to the administration of justice which bring the judicial office into disrepute, and are, therefore, a proper subject for consideration by this Commission. *In re Greenberg*, 442 Pa. 411, 280 A.2d 370 (1971); Anno. 53 ALR 3d 882, § 18(a) (emphasis added).

Four members of the Judicial Qualifications Commission believed that the Bar Disciplinary Committee and not the Judicial Qualifications Commission had jurisdiction. The Minority Report stated as follows:

The majority recommendation for censure is based upon conduct of the respondent Justice of the Peace occurring before he was appointed to his judicial office. The respondent was then an attorney in the private practice of law in Tucson, Arizona. He acted improperly with respect to funds belonging to a client he represented. From this, there followed an investigation by a committee of the bar which ultimately resulted in suspension of his license to practice law for one year by the Arizona Supreme Court. The circumstances are outlined by the supreme court with some detail in its decision. See *In the Matter of a Member of the State Bar of Arizona, Pete M. Rubi, Respondent*, 133 Ariz. 491, 652 P.2d 1014 (1982).

While principles of double jeopardy and double punishment do not apply to the present proceedings in the strictest sense, the censure recommended to the Arizona Supreme Court is ground that has already been gone over. The recommendation calls for a reproval already once publicly made by reason of the bar disciplinary proceedings. It would be a misperception to see the recommendation for censure as something which springs from respondent's conduct as a judge. It does not.

\*  \*  \*  \*  \*  \*

The inquiry has revealed no misconduct distinct from that which earlier led to suspension of respondent from the practice of law for one year. We do not think the misconduct was of such extent or nature to merit the Commission's recommendation of a further public reproval or other sanction.

In response the majority filed the following:

The majority believes that it would be helpful to the Supreme Court to under-

stand the divergence between the majority and minority concerning the recommendation in the above-referenced matter.

The majority recommendation is grounded upon the fact that in addition to those matters which occurred in the "pre judge" setting, and which were not before the Supreme Court at the time of its earlier ruling, the following matters were considered in aggravation:

1. The statements of the respondent before this Commission which were not credible. (Findings of Fact No.'s 20, 22, 23, 24 and 42.)

2. The testimony of the respondent before this Commission which disclosed an inability to discern at this late date, the conflicts of interests regarding Estrada, (Findings of Fact No.'s 34, 35, 36, 37 and 38), and the conversion of the Estrada funds. (Findings of Fact No.'s 40, 43, 44, 45 and 46.)

Admittedly the main thrust of the alleged misconduct on the part of the respondent was for conduct which occurred prior to the time he became a justice of the peace. The Judicial Qualifications Commission, however, based its actions in part on respondent's conduct after he had become a judge. While he was a judge, respondent showed lack of candor in testifying before both the lawyer disciplinary agency and the Judicial Qualifications Commission. As such, the Judicial Qualifications Commission had jurisdiction.

We have stated:

The lawyer disciplinary agency has jurisdiction over a lawyer for conduct which occurred while a lawyer, as well as jurisdiction over a lawyer who is no longer a judge for conduct that occurred during and prior to the time the lawyer became a judge. *See* Rule 3.2, Judicial Standards, *supra; Florida Bar v. McCain,* 330 So.2d 712 (Fla.1976).

As to jurisdiction over an incumbent judge for conduct which occurred prior to becoming a judge, the courts are not in agreement. The Standards for Lawyer Discipline and Disability Proceedings rec-

ommend that incumbent judges should not be subject to the jurisdiction of the lawyer discipline agencies, Rule 4.4, Lawyer Standards, *supra,* and some states follow this rule. *See State ex rel. Turner v. Earle,* 295 So.2d 609 (Fla.1974); *In re Proposed Disciplinary Action by the Florida Bar Against a Circuit Judge,* 103 So.2d 632 (Fla.1958).

We believe, however, the better and more workable practice is that jurisdiction in disciplinary actions should be based upon the position the individual held at the time of the alleged misconduct.

*In re Riley,* 142 Ariz. 604, 607, 691 P.2d 695, 698 (1984).

In *Riley, supra,* we held that the lawyer disciplinary agency had jurisdiction over a judge for conduct which occurred before the time he became a judge. The problem we faced in *Riley* and the problem we face here, is that jurisdiction in lawyer discipline and judicial discipline is not always exclusive. Lawyer misconduct will often follow a judge from practice to the bench. Thus, there can be overlapping or dual jurisdiction by the commissions. Specifically, Rule 4(C), R.Proc.Jud.Qual., 17A A.R.S., provides that it is within the commission's jurisdiction to consider conduct occurring prior to judicial service in making its recommendations as to whether a judge should be censured or removed from office.

This does not result in a disadvantage to the respondent since we have final discretion in both cases and, we can and will consider previous sanctions that have been imposed upon respondent for his or her misconduct before approving additional sanctions. In this we would be in keeping with the standards of professional discipline for lawyers and judges, Rule 3.1, which reads as follows:

3.1 Jurisdiction Over Sitting Judge. Other than jurisdiction through impeachment, the commission should have exclusive jurisdiction over investigations and recommendations regarding the discipline arising from the conduct of all active judges, including part-time judges.

This jurisdiction should include conduct that occurred prior to a judge's assuming judicial office.

Standards Relating to Judicial Discipline and Disability Retirement, Professional Discipline for Lawyers and Judges (1979), National Center for Professional Responsibility and The American Bar Association. Admittedly, the standards speak of "exclusive jurisdiction" but this is only the ideal which in practice as shown in the instant case is not always attainable.

We believe that the Judicial Qualifications Commission had jurisdiction over the respondent after he became a judge based not only on respondent's lack of candor but as a result of the decision of the court in *In re Rubi, supra,* just as, for example, a conviction of a felony after the person becomes a judge will give the Judicial Qualifications Committee jurisdiction even though the criminal conduct occurred before he became a judge. In a case factually close to the present case Justice Levin, of the Michigan Supreme Court, while disagreeing as to the sanction imposed, concurred in the court's jurisdiction, stating:

Misconduct, although unrelated to the performance of judicial duties, and even if occurring before the lawyer becomes a judge, may be "conduct that is clearly prejudicial to the administration of justice" *within* the meaning of Const. 1963, art. 6, § 30.

\* \* \* \* \* \*

The act of misconduct of which Ryman is guilty is essentially the same act of unprofessional conduct found by the State Bar Grievance Board, namely the backdating and improper signing of the deeds.

\* \* \* \* \* \*

We agree with the Tenure Commission that this conduct, although it occurred before Ryman became a judge, is of a kind "clearly prejudicial to the administration of justice" and that disciplinary action is justified.

Such misconduct by a person who is or becomes a judge may engender disrespect for the entire judiciary. It matters not that the complained of conduct occurred before assumption of judicial office or was otherwise unrelated to the performance of judicial duties. When a person known to have engaged in unprofessional conduct is allowed without reproach to exercise his judicial function, the integrity of the entire judiciary is put in question and its ability to perform impaired.

*In the Matter of Frank H. Ryman,* 394 Mich. 637, 644, 653–54, 232 N.W.2d 178, 180, 184 (1975) (emphasis added). We believe the Judicial Qualifications Commission had jurisdiction.

## 2. IS THE RESPONDENT GUILTY OF MISCONDUCT?

■ The Judicial Qualifications Commission made the following conclusions:

1. The failure of Pete M. Rubi to place his client's funds in a trust account, the failure to keep proper records of his client's funds and the commingling of his client's funds with his own constitute violations of *DR 9–102(A)(1) and (2) and 9–102(B)(3).*

2. Pete M. Rubi's conversion of his client's funds to his own use constituted a violation of *DR 1–102(A)(3).*

3. The false statements made by Pete M. Rubi in the Trust Account Questionnaire submitted to the State Bar of Arizona were in violation of *DR 9–102.*

4. Although the conduct of Pete M. Rubi, which gave rise to this inquiry, occurred before he became a justice of the peace, (save and except for his testimony before this Commission), nonetheless, the nature of his conduct and of the violations which occurred are prejudicial to the administration of justice which bring the judicial office into disrepute, and are, therefore, a proper subject for consideration by this Commission. *In re Greenberg,* 442 Pa 411, 280 A.2d

370 (1971); Anno. 53 ALR3d 882, § 18(a).[2]

We have reviewed the record and we agree with the Judicial Qualifications Commission. We find that respondent violated the Code of Judicial Conduct and that his actions constituted "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Ariz. Const., *supra.*

## 3. SANCTIONS

■ We also agree with the commission that public censure is the appropriate sanction. Although the Arizona Constitution art. 6.1, § 3 provides for a suspension when a judge is convicted of a felony, as a practical matter, there are only three sanctions available in the discipline of a sitting judge: private reprimand, public censure and removal from office. Ariz. Const. art. 6.1, § 4.[3] In the instant case, the respondent having been previously suspended from the practice of law for one year, we believe that public censure is the appropriate sanction.

Respondent is censured.

GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.

HOLOHAN, Chief Justice, dissenting.

A review of the history and language of Article 6.1, § 4 of the Arizona Constitution causes me to conclude that the Judicial Qualifications Commission had no jurisdiction in this case. I, therefore, dissent from the decision of the court.

While authority from other jurisdictions can be helpful in some instances to aid this court in the proper construction of an Arizona constitutional provision, the ultimate resolution of the issue rests upon the particular wording and history of the Arizona constitutional provision at issue. In this case the constitutional amendment, which ultimately became Article 6.1, originated in the Arizona House as H.C.R. No. 23, § 1 (Laws 1970). The House legislative history indicates that the provision was modeled after the California Constitution.[1] When the Arizona constitutional provision is compared with the California version in effect at the time, it is clear that California explicitly provided for judicial qualification commission jurisdiction over misconduct which occurred prior to a judge's present term of office, subject to a six year limitation. Such authority is noticeably absent in the Arizona provision. The California version read in pertinent part:

(c) On recommendation of the Commission on Judicial Qualifications the Supreme Court may (1) retire a judge for disability that seriously interferes with the performance of his duties and is or is likely to become permanent, and (2) censure or remove a judge for action occurring *not more than 6 years prior to the commencement of his current term that constitutes wilful misconduct in office, wilful and persistent failure to perform his duties, habitual intemper-*

---

2. We note that the commission cited the attorney disciplinary rules in force at the time of defendant's conduct, 17A A.R.S., Sup.Ct. Rule 29(a)—Code of Prof.Resp. as a basis for respondent misconduct. Violations of the lawyers code of professional responsibility can also be a violation of the code of judicial conduct. This is in harmony with the Judicial Standards, *supra,* which read:

   3.3 Grounds. Grounds for discipline should include:

   \* \* \* \* \* \*

   (e) Any conduct that constitutes a violation of the codes of judicial conduct or professional responsibility.

3. Admittedly, the article makes no mention of private reprimand. This is at least an implied

power of the Judicial Qualification Committee and this court.

1. The following entry occurs in the minutes of House Committee on Judiciary, Suffrage and Elections, March 31, 1970:

   H.C.R. *23*—const. amend. establishing a commission on judicial qualifications

   \* \* \* \* \* \*

   Mr. Roeder explained that H.C.R. 23 is modeled after the California constitution. It is a means by which a commission can be created to take care of situations where a member of the judiciary can be disciplined or removed under limited circumstances, if necessary.

   \* \* \* \* \* \*

*ance, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute.*

Cal. Const. Art. VI § 18 (Deering 1974) (emphasis added). The Arizona provision is identical to the above except for the modifying phrase which extends Commission jurisdiction to misconduct prior to a judge's current term of office. The absence of this phrase would imply either an intent to extend Commission jurisdiction to all prior acts, or to limit such jurisdiction to tenure in office.

Arguments contained in the 1970 Referendum and Initiative Publicity Pamphlet support the limited nature of Commission jurisdiction. Voters were presented with a "Statement in Behalf of Proposition [103]" (the judicial discipline referendum) filed by Robert W. Browder, then President of the State Bar of Arizona:

> Proposition 103 deals with the troublesome problem that sometimes persons elected as judges develop disabilities *while in office.* It is unfair to all the other judges who are doing their jobs, and to the people who have business in court, to keep judges on the bench who cannot perform because of, for example, a mental condition. It is even more unfair to the taxpayers. This proposition adopts a plan which exists in one form or another in twenty states and has worked well. It permits removal of judges under the guidance and final determination of the Supreme Court when they can no longer do their jobs.

(emphasis added). The Bar's argument favoring passage certainly concentrated on the theme that the proposed amendment dealt with conduct and performance by judges while in office.[2]

The history of the constitutional amendment does not provide a conclusive answer to the issue whether conduct occurring prior to judicial office can be considered as included within the provision "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." An analysis of the language of the provi-

sion itself must provide the ultimate solution.

In statutory or constitutional construction the meaning of words can be determined by examining them in their association with other words of the provision. This rule of construction, *noscitur a sociis,* enables one to ascertain the meaning of doubtful words by referring to the meaning of accompanying words. *Olvey v. Calizona Land & Cattle Co.,* 76 Ariz. 368, 372, 265 P.2d 432, 434 (1954); *City of Phoenix v. Yates,* 69 Ariz. 68, 73, 208 P.2d 1147, 1150 (1949). Examining the words in question in their association with the other words of the constitutional provision leads to the conclusion that the conduct referred to which brings the judicial office into disrepute is conduct by the judge while in office.

In support of the above conclusion it must be noted that two of the four grounds for removal are expressly modified by language which limits the actionable misconduct to judicial office: "wilful misconduct *in office*" and "wilful and persistent failure to perform *his duties.*" The third ground, "habitual intemperance," would appear to be applicable to intemperance during the term of office. The foregoing grounds for removal refer explicitly or implicitly to conduct in office. There is nothing in the ground for removal at issue which indicates that the term "conduct" was to be defined or considered in any different fashion from that applied to the other provisions. The accompanying words in the provision place the word "conduct" in the same class that they represent. *See Dunham v. State,* 140 Fla. 754, 192 So. 324 (1939). All the other operative provisions of the constitutional section refer to acts dealing with judges in office. Absent some contrary expression the term conduct should be construed in the same manner as applying to conduct in office.

The majority suggests that the action of the Commission was partially based on "conduct in office" because of the findings

2. The Publicity Pamphlet contained no statements against passage.

by the Commission concerning the respondent's testimony before it. The answer to this argument is that, if the Commission had no jurisdiction, the respondent should never have been forced to appear before the Commission. There was no basis for the Commission to conduct an inquiry in the first instance, and the testimony before the Commission in a matter outside their jurisdiction cannot be bootstrapped into a matter within their jurisdiction.

The recommendation of the Judicial Qualifications Commission should be rejected.