295 P.2d 839

**In the Matter of Rudolph J. STONE, a member of the State Bar of Arizona.**

**No. 6100.**

Supreme Court of Arizona.

April 10, 1956.

Wilbert E. Dolph, Jr., Tucson, for the State Bar.

Houston & Nihan, Tucson, for respondent.

PER CURIAM.

Preliminary hearing was held before the local administrative committee of the state bar of Arizona for district number three,

hereinafter referred to as the committee, pursuant to affidavits filed by Arthur D. Fossett, Jr., and Margaret T. Fossett, his wife, stating facts which if true would constitute professional misconduct by Rudolph J. Stone, a member of the state bar of Arizona, hereinafter designated respondent. After the hearing the following formal charges were made against the respondent:

"That for a fee as an attorney sometime during the month of May, 1953, you did prepare for Arthur D. Fossett, Jr., a master sergeant of the United States Air Force, stationed at Davis-Monthan Air Base, Tucson, Arizona, various answers to a United States air force questionnaire, a copy of the questionnaire as answered being hereto appended.

"That in preparing the answers you knew the intention of said Arthur D. Fossett to file the answers with some branch of the United States air force, and that insofar as the answers purported to state that the wife of Arthur D. Fossett had made an automobile trip to the state of Maine during the month of June, 1951, you knew the answers were false or you had reason to believe and did believe the said answers were false."

Hearing was held on the foregoing charges, after which the committee made a finding that the formal charges were true and recommended respondent's disbarment. The record was transmitted to the board of governors of the state bar, hereinafter designated the board. Thereafter, respondent requested that the matter be remanded to the committee for the presentation of additional and new evidence, which request was granted. The committee held further hearings, received additional evidence and reaffirmed its original finding, recommended disbarment and transmitted the record to the board of governors. Respondent did not submit to the board any statement in opposition to the report of the committee and at a meeting of the board on May 14, 1955, in Yuma, Arizona, the matter was considered at great length. Some members desired to further study the original and supplementary findings of the committee and there was a continuance. Thereafter, on June 11, 1955, after further consideration, the board by formal motion adopted and approved the findings and recommendation of the committee that respondent be disbarred. One member of the board, Dwight L. Solomon, filed a minority report contending that the recommendation for disbarment should not be sustained.

It is undisputed that while Sgt. Fossett was stationed at the air base near Tucson, he received orders for overseas duty. Upon his leaving, it was planned that his wife and child would go to Maine during his absence. While overseas, thinking his wife had made the trip, he approximated the time of her departure, filed claim and received travel pay for his wife's transporta-

tion from Tucson to Maine. When he returned home and after discovering his wife had not made the trip, he applied for and received travel pay for her return from Maine to Tucson. He stated as a reason for filing for the return trip that he was trying to "cover up" because he thought "it looks foolish to send a wife home and not bring her back". A general investigation was started by the military authorities concerning the legitimacy of travel claims and Fossett sought the professional services of respondent for advice and representation in the event of court-martial proceedings.

The correctness of the finding of the committee as approved by the board is dependent upon whether they properly evaluated what transpired between respondent and his client. Their respective stories are diametrically opposed. Sgt. Fossett testified that at a conference in respondent's home at which Mrs. Fossett was present they told respondent the full truth concerning the filing and collection of claims when the trip was not performed, the investigation that was being made and the necessity of his filing with the proper authorities supplementary information which would sustain the legitimacy of the Fossett claims. This supplementary data was to be given in writing under oath in the form of a questionnaire which would elicit information that the travel was performed and give the mode and dates thereof. The gist of the testimony of the sergeant and his wife is that respondent, having been told by them that a false claim had been filed for travel not performed, advised them to execute and file the questionnaire falsely representing that such travel had been performed. It was testified that respondent told them that the offense had already been committed and no further damage could come out of a fraudulent affidavit to the government; that he (respondent) said he would make out some extra copies of the questionnaire and one of them could be sent to Mrs. Fossett's mother (where the wife was represented to have gone) and if she would go along, she could brief the neighbors as to when the wife arrived and departed in accordance with the information contained in the questionnaire. Subsequently, respondent did prepare several copies of the questionnaire stating that the wife left Tucson on June 2, 1951, for Bangor and Gardner, Maine; that she remained there until approximately June 18 and rejoined her husband at the local base in Tucson on June 18, 1951; and that the sergeant returned to his base from overseas November 29, 1951. The evidence was that had she gone, she woud have traveled alone with a small baby in arms.

Respondent's story is that the wife insisted she had made the trip and the sergeant believed she was truthful about it; that at their request he had filled out the questionnaire but did so entirely on the information given him; that he questioned Mrs. Fossett at length to determine whether she was telling the truth and, subsequent-

ly, told his wife "there is indication to me also that there is loop holes in her story. She seems to be groping some for some kind of answers to my questions". The questionnaire, with several copies, was filled out by respondent and executed under oath in his office. Respondent's wife, who was not present at the conversations between respondent and the Fossetts, gave some testimony slightly corroborative of respondent's story. Her opportunity for hearing the conversation, however, was limited since she was engaged in the preparation of dinner and apparently not particularly concerned with the details of the conversations.

After the matter was, at the request of respondent, remanded to the committee for the presentation of further evidence, a Sgt. Raidel and his wife were produced to testify that they had an identical problem as that of the Fossetts and respondent as their counsel advised them that since no travel had been performed, there was nothing to do but pay the money back. Sgt. Raidel likewise testified that he had a conversation with Fossett wherein Fossett said he had come clean with the authorities and obtained a light sentence; that he lied and told that respondent had given him the wrong advice. On the other hand, this witness later testified Fossett did not tell him he had lied to the military authorities. This witness also evidenced extreme dislike for Sgt. Fossett and severely assailed his character.

Col. Russell E. Dougherty, an air force officer, testified that Sgt. Fossett served under him; that the sergeant at his own request confessed to him the full story about the false claims, telling him that he had filed the false questionnaire on the advice of respondent. This witness testified he was well acquainted with the sergeant, had experienced some social contact with him and his family, was acquainted with other men and officers who were acquainted with the sergeant and that "his reputation is the best. It is excellent, for both truth, and veracity and reliability".

Sgt. Frederick Hayes, Jr., a flight engineer in the air force, testified that he was well acquainted and served with Fossett; was acquainted with others who associated with him; and when asked concerning Fossett's reputation for truthfulness said: "Yes, I feel I am fully aware of Sgt. Fossett's reputation and it is good, extremely good."

The foregoing is essentially the gist of evidence which the committee heard and our unpleasant problem is whether we, having the right to weigh the evidence and approve or disapprove the findings of the committee and board, should say they were wrong in their conclusions that it clearly appears the charges against respondent were sustained.

We appoint the members of the committee and select capable and fair lawyers to hear the evidence in these matters

and submit their findings to us for our consideration. Their findings should be given very serious consideration. When testimony as here conflicts with no possibility except that someone is untruthful, the one hearing the testimony and observing the conduct of the witnesses and experiencing the attendant atmosphere, is much more able to correctly judge the credibility of the witnesses than we or the board who are limited to the reading of a cold record. We feel that, under such circumstances, where there is a sharp conflict in the evidence, the findings of the committee should be sustained if they are inherently reasonable. Cf. In re Everett, 80 Ariz. 124, 293 P.2d 928.

The record shows both the committee and the board of governors considered this matter carefully and cautiously in an attempt to determine the truth and have conscientiously come to an ultimate conclusion. Reviewing this record we are unable to say that the committee acted unreasonably in any respect in believing that the Fossetts were truthful and the respondent's testimony was untruthful. The committee would be fully justified in deciding that witness Raidel's testimony was entirely discredited and that the witness Fossett bore a good reputation for truthfulness and reliability. The contents of the questionnaire carry a flavor of suspicion. It has Mrs. Fossett leaving Tucson with an infant on June 2nd, traveling to Maine and leaving there June 14th and back in Tucson four days later, a rather unlikely situation, especially when her husband did not return to the base until November. The Fossetts' testimony is susceptible of the interpretation that these dates were selected and placed in the questionnaire because the period covered thereby would be the easiest to sustain as the truth when subjected to investigation.

With respondent's testimony determined to be untruthful, the charges were proven by clear and convincing evidence and the recommendation of the committee and the board is approved.

It is ordered that respondent be disbarred and his name stricken from the roll of attorneys authorized to practice law in the state of Arizona.