518 P.2d 562

**In the Matter of a Member of the State Bar of Arizona, Daniel E. MOORE, Respondent.**

**No. SB–25.**

Supreme Court of Arizona,
In Banc.

Feb. 6, 1974.

D. Thompson Slutes, Tucson, for State Bar.

Flynn, Kimerer, Thinnes & Galbraith, by John J. Flynn and Tom Galbraith, Phoenix, for respondent.

HOLOHAN, Justice.

This matter involves a disciplinary proceeding against a member of the State Bar of Arizona. The proceeding was initiated in the usual manner before the local Administrative Committee of the State Bar. Evidence was taken and a recommendation made by the Committee; subsequently the matter was reviewed by the Board of Governors of the State Bar at which time additional evidence was received and arguments heard. Both the Administrative Committee and the Board of Governors have recommended that the respondent, Daniel E. Moore, be disbarred. The matter was heard on review by this Court pursuant to Rule 37, Rules of the Supreme Court, 17A A.R.S.

In a disciplinary proceeding against an attorney for professional mis-conduct this Court is guided by certain well defined principles: (1) the evidence of unprofessional conduct by an attorney must be clear and convincing before disciplinary action is taken; (2) the recommendation of the Board of Governors of the State Bar is entitled to serious consideration; (3) this Court is the trier of the ultimate facts as well as law in the case of a charge of unprofessional conduct by an attorney. In re Rogers, 100 Ariz. 214, 412 P.2d 710 (1966); In re Block, 103 Ariz. 508, 446 P.2d 237 (1968).

Most of the facts found by the Administrative Committee and the Board of Governors are not in dispute. From a review of the record the evidence clearly supports the findings made by them. It appears that the respondent was appointed Executor of the Estate of Zerena M. Shattuck, deceased, by the Superior Court of Cochise County in 1966, and that from 1966 to and including a part of 1969 the respondent acted as Executor and attorney for the estate.

In addition to substantial landholdings the Shattuck Estate included all the issued and outstanding stock of two corporations, namely, State Warehouse Corporation and Rancho de Repuesta Corporation.

During the above mentioned period the respondent diverted and commingled approximately $71,000 which belonged to the estate and the corporations, and that a portion of the $71,000 was converted to the respondent's own use.

One of the instances of the conversion of estate funds occurred in the latter part of December 1967 and the early part of January 1968 when the respondent caused $4,000 to be transferred from the Shattuck Estate to the trust account of his law firm and thereafter caused a check to be drawn on the law firm's trust account in the amount of $4,200 payable to respondent which he deposited in his personal checking account. Prior to the deposit of the check from the trust account the respondent had issued a check, drawn on his personal account, in the amount of $4,300 pay-

able to the Phelps Dodge Mercantile Company in payment of his annual account, but the balance in the personal checking account at the time the check was drawn was approximately $375.

On two other occasions the respondent caused checks to be drawn on State Warehouse Corporation and Rancho de Repuesta Corporation to pay the hotel bills of the respondent. The total amount of the checks was $2,000.

The respondent repaid the estate the sum of $25,500 after attorneys for the principal beneficiary threatened legal action in regard to the handling of the estate. In order to make the repayment of $25,500 the respondent had to borrow $10,000 from his mother.

The question before us is ably presented by a statement by counsel for the respondent:

"This is a case in which an attorney, acting as executor, has commingled and converted funds. In the ordinary course of events, disbarment undeniably results from such activity. The question is whether the policy of protecting the public under the circumstances of this case is so strong, that no consideration of the respondent, as an individual, is sufficient to alter the stern and complete enforcement of this rule." (Brief of respondent, p. 3)

The Code of Professional Responsibility of the American Bar Association provides, in part, in the Disciplinary Rules:

"DR 9-102 Preserving Identity of Funds and Property of a Client.

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;"

The practice of maintaining separate or special accounts for the funds of clients has been found necessary through long years of experience. Over 40 years ago the California Supreme Court in speaking of their rule which provided that a member of the State Bar shall not commingle the money or other property of a client with his own stated:

"This salutary rule was adopted to provide against the probability in some cases, the possibility in many cases, and the danger in all cases that such commingling will result in the loss of clients' money. Moral turpitude is not necessarily involved in the commingling of a client's money with an attorney's own money if the client's money is not endangered by such procedure and is always available to him. However, inherently there is danger in such practice for frequently unforeseen circumstances arise jeopardizing the safety of the client's funds, and as far as the client is concerned the result is the same whether his money is deliberately misappropriated by an attorney or is unintentionally lost by circumstances beyond the control of the

attorney." Peck v. State Bar of California, 217 Cal. 47, 17 P.2d 112 at 114 (1932).

The commingling of a client's funds with an attorney's is a violation of the Code of Professional Responsibility. Rule 29(b) of the Rules of the Supreme Court provide that such a violation is grounds for disbarment, suspension or censure.

When such commingling is also accompanied by a conversion of the client's funds this Court has had no hesitancy in ordering disbarment of an attorney responsible for such acts. Our most recent case in point is In re Campbell, 108 Ariz. 200, 495 P.2d 131 (1972). The attorney in the cited case converted funds from an estate and some two years later after an accounting and demand, the funds were repaid. This Court ordered the attorney disbarred despite the fact that complete restitution had been made, that the complainants requested that the attorney not be disbarred, and that the members of the bench and County Bar vouched for his competency and character.

The respondent urges that he had no corrupt intent in his acts. He argues that he took only those measures which he thought necessary to preserve the assets of the estate according to his perception of the reality of the times and under the pressures of those times.

The pressures to which respondent has reference involved the problems inherent in the particular estate. There were substantial landholdings which were the subject of complicated land and reclamation law problems. There was a low cash flow in the estate. There were strained feelings between respondent and the principal beneficiary. There were tax problems facing the estate. Respondent maintains that these factors made it necessary for him to operate in a somewhat unorthodox manner.

Conceding the problems outlined by respondent we must conclude that they did not provide a basis for his method of handling funds which were entrusted to his care. His handling of the funds of the estate breached his trust. Further the evidence supports the findings that on occasion he actually converted the funds of the estate to his own personal use. The payment of his mercantile bill by funds withdrawn from the estate cannot under any conceivable circumstances be said to be for the benefit of the estate. Respondent simply used the funds for his own personal use.

The occasions when the respondent used funds of corporations under the control of the estate were other instances of his misuse of funds entrusted to his control.

Finally it must be pointed out that when the occasion arrived for the respondent to repay the estate the sum of $25,500, the respondent was unable to produce such sum except by borrowing from a third party. These circumstances sharply demonstrate that the respondent did not have the funds of the estate in any separate form available to the estate; rather the funds of the estate had been used and were in fact some $10,000 short of being available to the estate.

The respondent prior to the administration of the Shattuck Estate had an unblemished record of service to his country and to his profession. He has been engaged in the practice of law for over 25 years, and prominent members of both bench and bar have testified to his reputation for truth, honesty and competency. Counsel for respondent argues that disbarment is too harsh and not necessary. We are reminded that the purpose of discipline is to protect the public, not to punish the individual lawyer. In re Greer, 52 Ariz. 385, 81 P.2d 96 (1938).

As we said in *Campbell*,

"We can be sympathetic to his problems, but we are very concerned that if similar economic pressures were placed upon him again, the same misconduct might result." 108 Ariz. at 201, 495 P.2d at 132.

The acts of the respondent over the number of years involved cause us to have the

**316**

same concerns in regard to the future conduct of the respondent. We accept the recommendations of the Board of Governors and find that the respondent should be disbarred.

It is, therefore, ordered that the respondent be disbarred effective March 1, 1974 unless otherwise specifically provided.

Pursuant to Rule 37(h), Rules of the Supreme Court, the respondent shall within 10 days prior to March 1, 1974 notify all clients of his inability to continue to represent them.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.