628 P.2d 38

**In the Matter of a Member of the State Bar of Arizona, Jacob Daniel DAVIS, Respondent.**

**No. SB–201.**

Supreme Court of Arizona,
In Banc.

April 8, 1981.

Rehearing Denied May 27, 1981.

Robert C. Hackett, Phoenix, for the State Bar of Arizona.

Shepard M. Weinstein, Phoenix, for respondent.

STRUCKMEYER, Chief Justice.

In this disciplinary action against Jacob D. Davis by the State Bar of Arizona, the Disciplinary Board of the State Bar of Arizona recommended that he be disbarred. Respondent is ordered disbarred.

Formal complaint against respondent was filed with Local Administrative Committee 5F of the State Bar of Arizona. Evidence was heard on the complaint by the Committee although respondent failed to personally attend the hearing. Pursuant to Rule 35(c), Rules of the Supreme Court, the Committee recommended disbarment. Although respondent was authorized by the rules to file a statement with the State Bar Disciplinary Board in opposition to the report of the Committee, Rule 36(a), Rules of the Supreme Court, he did not. The Disciplinary Board voted to accept the Findings of Fact, Conclusions of Law and Recommendations of the Local Committee. Respondent did file objections to the Findings of Fact and Recommendations when the matter was sent to this Court for disciplinary action.

**2**

Respondent during the year 1977 and thereafter was and presently is a duly licensed and practicing member of the State Bar of Arizona. Respondent and Fred A. Martin, acting for and on behalf of his son, Sydney, executed a contingent retainer agreement by which respondent agreed to represent the Martins for personal injuries arising out of an automobile accident. David G. Valenzuela executed a similar agreement with respondent seeking to recover for his personal injuries arising from the same accident. Both the Martins and Valenzuela signed a written agreement by which they promised to withhold from any settlement, judgment or verdict in their favor such amounts of money as would be necessary to pay the Gear Clinic, Ltd. for medical services rendered to them. Respondent signed an acknowledgment that he would withhold such sums from any judgment, settlement or verdict as might be necessary to adequately protect Gear Clinic, Ltd.

Thereafter, respondent negotiated a settlement of the claims of the Martins and Valenzuela in which the Hartford Accident and Indemnity Company, on behalf of the defendant in the accident, agreed to pay $2,800.00 to Sydney A. Martin and $4,100.00 to David Valenzuela. Respondent deposited the settlement drafts issued by Hartford in his client trust account. He paid Valenzuela the sum of $1,300.00. Valenzuela received no additional funds from the settlement proceeds. The Martins were paid nothing whatsoever by respondent. Nor did respondent pay Gear Clinic, Ltd. any sums from the settlement proceeds. The proceeds were, in fact, withdrawn by respondent and comingled with other of his funds and were thereafter converted by him to his own use without the permission of Valenzuela, the Martins or the Gear Clinic, Ltd.

The Local Administrative Committee 5F of the State Bar of Arizona concluded:

"1. Respondent deposited settlement funds in his trust account and thereafter converted funds belonging to the Martins, Valenzuela and Gear Clinic, Ltd. for his personal purposes without authorization from the Martins, Valenzuela or Gear Clinic, Ltd.

2. Respondent co-mingled his personal funds with those of his clients in his trust account.

3. Respondent failed to account to his clients for monies received in settlement of claims on their behalf.

4. Respondent violated the Code of Professional Responsibility, specifically Rule 29(b)(1) of the Rules of the Supreme Court of the State of Arizona, Disciplinary Rule 1–102(A)(3), (4) and (6), Disciplinary Rule 9–102(A) and (B) and A.R.S. § 32–267(3) and (8)."

While the Committee found that the respondent failed to keep both Valenzuela and the Martins apprised of the status of their claims, the evidence is not entirely clear as to this. Hence, we pass on to consider the more serious charges embodied in the formal conclusions of the Local Administrative Committee.

The evidence is clear and convincing that the respondent commingled the settlement proceeds with his other funds and converted them to his own use. Although respondent did not appear at the hearing before the Local Administrative Committee 5F, testimony taken in a deposition in connection with a law suit filed by Gear Clinic, Ltd. was admitted into evidence before the Committee. These questions were asked respondent and these answers were given:

"Q. Now, going back to the Martin case, where you have an amount of $1,804.47, which you were to pay the Gear Clinic, what did you do with those funds?

A. I commingled them with funds in my corporation.

\*　　\*　　\*　　\*　　\*　　\*

Q. What about the Valenzuela case, what about those funds?

A. They were both settled at the same time. The drafts were put in for collection through my trust account \* \* \*. \* \* [T]hen I lent these funds or promise [sic] against them to the corporation and they were not repaid. They're still due and oweing [sic].

Q. To the corporation?
A. Yes."

■ The evidence adequately supports the Local Administrative Committee's conclusions numbers 1 and 2 that respondent comingled his clients' funds with those of his own and thereafter converted them for his personal purpose.

Inasmuch as Sydney Martin testified that he had received none of the settlement proceeds and Valenzuela testified that he had received only $1,300.00, and the testimony was uncontradicted that the Gear Clinic, Ltd. was not paid any amounts in satisfaction of the medical expenses of Sydney Martin or Valenzuela, conclusion number 3, that respondent failed to account to his clients for monies received in settlement of claims in their behalf, is fully established. Respondent's actions were in direct violation of the Code of Professional Responsibility, Disciplinary Rule 1–102(A)(3), (4) and (6), and Disciplinary Rule 9–102(A) and (B).

Respondent argues certain matters which we think are clearly not relevant to a determination of his commingling of the settlement proceeds and their subsequent conversion. He argues that the disciplinary procedure was patently unfair since the chairman of the local administrative committee which heard this matter initiated the hearing by signing a complaint and the chairman would not have signed the complaint unless he believed the allegation contained in it. Respondent contends this shows the chairman of the committee was predisposed against him at the time of the formal hearing.

■ Rule 33(b)(2), Rules of the Supreme Court, provides that if after a preliminary investigation the local administrative committee finds probable cause to believe that an attorney has engaged in misconduct justifying disciplinary action, the committee shall prepare a formal complaint to be signed by the committee's chairman. The complaint must state specifically the acts of misconduct charged and notice the attorney in question to appear before the committee at a date certain for a hearing to determine the truth of the charges alleged in the complaint and whether discipline is warranted. It is not necessary that the chairman of the committee believe the allegations, only that he believes probable cause exists to support the allegations. Without a showing of actual bias, we see nothing unfair in the chairman participating in the formal hearing and formulation of the committee's findings, conclusions and recommendations. The determination of probable cause and a finding of a violation of a Disciplinary Rule rest on separate considerations. As the United States Supreme Court said in holding a similar combination of investigative and adjudicative functions in the discipline of physicians not inherently unfair or violative of due process:

"The risk of bias or prejudgment in this sequence of functions has not been considered to be intolerably high or to raise a sufficiently great possibility that the adjudicators would be so psychologically wedded to their complaints that they would consciously or unconsciously avoid the appearance of having erred or changed positions. Indeed, just as there is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding, there is no incompatibility between the agency filing a complaint based on probable cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute. Here, if the Board now proceeded after an adversary hearing to determine that appellee's license to practice should not be temporarily suspended, it would not implicitly be admitting error in its prior finding of probable cause. Its position most probably would merely reflect the benefit of a more complete view of the evidence afforded by an adversary hearing.

The initial charge or determination of probable cause and the ultimate adjudication have different bases and purposes. The fact that the same agency makes them in tandem and that they relate to the same issues does not result in a procedural due process violation." *Withrow v. Larkin*, 421 U.S. 35, 57–58, 95 S.Ct. 1456, 1469–1470, 43 L.Ed.2d 712 (1975).

**4**

Respondent also argues that the recommendation that he be disbarred is inappropriate for the reason that he should not lose a lifelong right to practice his profession for the small sums involved here. We held in *In re Moore*, 110 Ariz. 312, 315, 518 P.2d 562 (1974):

> "The commingling of a client's funds with an attorney's is a violation of the Code of Professional Responsibility. Rule 29(b) of the Rules of the Supreme Court provide that such a violation is grounds for disbarment, suspension or censure.
>
> When such commingling is also accompanied by a conversion of the client's funds this Court has had no hesitancy in ordering disbarment of an attorney responsible for such acts."

We approve of the respondent's objections to the assessment of general administrative and screening costs in the sum of $600.00, noting that there is no breakdown of these items. The sums of $57.45 for service of process and $200.30 for duplicating costs will be allowed. The sums of $200.00 and $400.00 for screening administrative costs and general administrative costs, respectively, will be allowed if the Disciplinary Board will within ten days file an itemized breakdown of the manner in which it has computed these costs with the Clerk of this Court.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.