877 P.2d 785

**In the Matter of a Suspended Member of the State Bar of Arizona, Victor Wallis RICHES, Respondent.**

**No. SB–94–0048–D.
Comm. No. 91–0913.**

Supreme Court of Arizona.

July 8, 1994.

Robert J. Welliever, Phoenix, for respondent.

Harriet L. Turney, Chief Bar Counsel, Phoenix, for State Bar of Arizona.

**JUDGMENT AND ORDER**

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined sua sponte review,

IT IS ORDERED, ADJUDGED AND DECREED that **VICTOR WALLIS RICHES**, a suspended member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of three years, effective as of November 27, 1991, for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that Respondent shall comply with all applicable provisions of Rule 63, Rules of the Supreme Court of Arizona, and shall promptly inform this Court of his compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED that **VICTOR WALLIS RICHES** shall pay the costs of these proceedings in the amount of $1,602.90.

EXHIBIT A

BEFORE THE DISCIPLINARY COMMISSION OF THE SUPREME COURT OF ARIZONA

Comm. No. 91–0913

In the Matter of

VICTOR WALLIS RICHES,

a Suspended Member of the

State Bar of Arizona,

RESPONDENT.

*DISCIPLINARY COMMISSION REPORT*

[Filed March 14, 1994.]

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on February 12, 1994, on an agreement for discipline by consent, pursuant to Ariz. R.S.Ct., Rule 56(a). The agreement, providing for suspension, was tendered prior to the issuance of a formal complaint, and was reviewed by the Commission without referral to a hearing committee or officer, pursuant to Rule 53(b).[1]

---

1. Rule 56(a) provides that a respondent may tender a conditional admission of a charge in exchange for a stated form of discipline other than disbarment. Rule 53(b) further provides that when an agreement for discipline is filed prior to the issuance of a formal complaint, it

## Decision

After consideration of the oral argument of the State Bar and the respondent and review of the record on appeal, a concurrence of the eight members of the Commission considering the matter [2] recommends that the agreement for discipline by consent be accepted, and that the respondent, Victor Wallis Riches ("Riches"), be suspended for a period of three years. The Commission further recommends that the effective date of that suspension be retroactive to November 27, 1991, which is the date on which the Court placed Riches on interim suspension, with his consent. By the same vote, the Commission adopts the tender of admissions and agreement for discipline by consent and the joint memorandum in support of agreement for discipline by consent as its findings of fact and conclusions of law.

## Facts

During the period from 1985 to 1990, Riches regularly retained sums for himself which belonged to the law firm in which he was a shareholder. The agreement for discipline by consent details eighteen instances in which Riches accepted representation of a client in a personal injury matter and, upon settlement, paid the client but failed to give his law firm the entire amount to which it was entitled. In a few instances, Riches also caused checks to be issued to another attorney who had performed no work on the cases, endorsed the checks in that attorney's name, and then retained the sums. In other instances, Riches referred cases to other attorneys and, when Riches received a check from them for his fee, failed to give his firm the portion to which it was entitled.

Riches and his law firm disagree substantially as to the exact amount of the funds involved. The law firm submitted a proof of loss to its insurance carrier, which, over Riches' objections, ultimately paid its policy limits of $250,000. At the time this matter came before the Commission, that issue was still in litigation.

Riches has conditionally admitted that his conduct was in violation of ER 8.4(b) and (c).

## Discussion of Decision

ER 8.4(b) and (c) provide that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on his honesty, trustworthiness, and fitness as a lawyer, and to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The Commission agrees that Riches' conduct violated ER 8.4(b) and (c).

In determining the appropriateness of a disciplinary sanction, the Commission finds it helpful to review the American Bar Association's *Standards for Imposing Lawyer Sanctions*. This is the guideline used by the Supreme Court. *In re Rivkind*, 164 Ariz. 154, 791 P.2d 1037 (1990).

Standard 5.11 provides for disbarment when a lawyer engages in serious criminal conduct, a necessary element of which includes misrepresentation, fraud, misappropriation, or theft, or any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. The Commentary to this Standard notes that this duty is breached regardless of whether a criminal charge has been brought against the lawyer.

Upon application of Standard 5.11 to the misconduct at issue, Riches' misappropriation of funds from his law firm would seem to indicate that disbarment is warranted. However, the Standards also contain provisions for mitigating factors which may justify a reduction in the degree of discipline to be imposed. The Commission also considered Standard 9.32, which lists mitigating factors, in determining the appropriate sanction.

One of the mitigating factors listed in Standard 9.32 is mental disability. Riches has been diagnosed, by Otto L. Bendheim, M.D., Alexander M. Don, M.D., and Bernard A. Jarman, Ph.D, as having a serious manic depressive bipolar mental disorder. Upon his review of the medical reports issued by these doctors, Jack Potts, M.D., a non-lawyer

---

shall be submitted directly to the Commission for review.

**2.** Commissioner Goldsmith did not participate in these proceedings.

member of a State Bar hearing committee and a doctor well-versed on bipolar disorders, confirmed their diagnosis.

The memorandum in support of the agreement for discipline by consent indicates that, in Dr. Potts' opinion, Riches would not have committed the subject misconduct, but for his bipolar disorder.[3] Dr. Bendheim reached a similar conclusion. In his report of May 13, 1993, Dr. Bendheim specifically found that, at the time the misconduct occurred, Riches was insane under the M'Naghten rule of insanity, in that his impairment prohibited him from "knowing the nature and quality of his many improper acts, and he was simply unable to differentiate between right and wrong during those periods."

While Dr. Don and Dr. Jarman agree that the bipolar disorder was, in all probability, the underlying cause for the misconduct, they will not state definitively that Riches was M'Naghten insane during each act of misconduct at issue. In his medical report of June 14, 1993, Dr. Don indicates he cannot determine that Riches was M'Naghten insane during each of the ethical breaches absent a detailed examination of each alleged offense and an attempt to correlate each of these incidents with the mental condition of Riches at those material times. Dr. Don does state, however, "with reasonable medical certainty," that individuals experiencing the bipolar disorder suffered by Riches are frequently oblivious to the consequences of their acts and unable to differentiate between right and wrong with respect to financial transactions and ventures. Dr. Don concludes that there are reasonable grounds to believe that these conditions pertained in this case.

Dr. Jarman indicates that he cannot determine the exact dates and times that the disorder significantly impaired Riches' judgment. In his medical report of June 6, 1993, however, Dr. Jarman notes that, at the time the subject misconduct occurred, Riches was experiencing manic episodes that were causing significant problems in many aspects of his life. He believes it reasonable to assume that those manic episodes, and the accompa-

nying significant impairment in judgment, would have affected his professional decision making, as well.

The Commission agrees that Riches' mental disability is a significant mitigating factor and, therefore, believes that a suspension, rather than disbarment, is appropriate in this matter. In determining the length of the suspension, the Commission turns to similar disciplinary cases.

The case most closely resembling the instant case is *In re Hoover,* 161 Ariz. 529, 779 P.2d 1268 (1989) (*"Hoover II"*), in which the respondent, who was diagnosed with bipolar disorder, was suspended for six months for misappropriating a large sum of money from his law firm. There is one key difference between *Hoover II* and the instant matter, however; the evidence was uncontested that Hoover was M'Naghten insane at the time of the misconduct. This was one of the bases for the imposition of such a short-term suspension. While all of Riches' doctors believe that his disorder affected his behavior, they do not all state definitively that Riches was M'Naghten insane during each act of misconduct at issue. Therefore, the Commission does not believe a suspension of six months is appropriate in this matter.

Because Riches' doctors have not unanimously diagnosed him as M'Naghten insane at the time of the misconduct, the Commission reviewed other similar cases, which did not turn on the issue of M'Naghten insanity, for guidance in determining the appropriate length of suspension.

In *In re Duprey,* No. SB–90–0058–D, Ariz. Sup.Ct. (Disc.Comm. No. 85–1263, et al.) (1991), the respondent was suspended for three years for misappropriating the monies of three clients. That suspension was retroactive to the date he was transferred to disability inactive status. Respondent Duprey had undergone treatment for cocaine and alcohol addiction, and severe psychological problems. In addition, as here, the respondent was fully cooperative throughout the disciplinary proceedings.

In *In re Kame,* No. SB–89–0026–D, Ariz. Sup.Ct. (Disc.Comm. No. 86–0602, et al.)

---

**3.** Joint Memorandum in Support of Agreement for Discipline by Consent, p. 2.

(1989), the respondent was suspended for three years for, among other misconduct, misappropriating funds belonging to four clients. Like Duprey, respondent Kame was also addicted to drugs and alcohol during the period of misconduct. He subsequently underwent treatment for these problems, and had been drug and alcohol free for approximately two years at the time of the disciplinary hearing.

In *In re Johnson*, No. SB–89–0027–D, Ariz.Sup.Ct. (Disc.Comm. No. 86–0451, et al.) (1989), the respondent was suspended for three years for abandoning his law practice and retaining fees and costs received in approximately sixteen matters for which he performed no work. This suspension was retroactive to the date the respondent was placed on interim suspension. At the time of the misconduct, Respondent Johnson was suffering from a form of depression known as dysthymic disorder and post traumatic stress disorder.

The cause of the underlying conduct, notwithstanding the effect, is the same, or similar, in the three previous cases and the instant matter. As here, the respondents were suffering from some form of mental impairment or chemical dependency when they misappropriated funds. In two of the previous cases, the resulting suspensions were retroactive to the date the respondent stopped practicing law. While the number of instances and the amounts of money involved are greater in the instant case, the Commission notes that, unlike these three cases, Riches never harmed any of his clients. Rather, the harm was to his law firm. In terms of mitigation, the Commission believes Riches' bipolar disorder is comparable to the impairment in these prior matters.

Misappropriation of funds, be it from a client or a law firm, is unacceptable behavior. As noted in *Hoover II*, "If not for the record establishing the diagnosis of bipolar manic depressive psychosis, the appropriate sanction for misappropriation of clients' funds normally is disbarment." 161 Ariz. at 529, 779 P.2d 1268. Like Hoover, however, Riches suffers from bipolar disorder. Although there is no consensus that Riches was

M'Naghten insane at the time of the misconduct, there is agreement that his bipolar disorder affected his conduct.

Standard 9.32 also lists interim rehabilitation as a factor to be considered in mitigation. It is clear that this respondent has taken steps to rehabilitate himself. He voluntarily consented to being placed on interim suspension in November 1991, and he has been or is currently being treated by Dr. Bendheim, Dr. Don, and Dr. Jarman.

Upon consideration of the Standards and their application to these facts and Riches' bipolar disorder, the Commission believes the three-year suspension issued in *Duprey*, *Kame*, and *Johnson* is appropriate in this matter, as well.

In addition, the Commission believes that the suspension should be retroactive. As of this date, Riches has been suspended for over two years, having been placed on interim suspension on November 27, 1991. The Commission notes that a prospective three-year suspension would result in an actual suspension of more than five years. Five years is the maximum length of suspension provided for by the Rules of Professional Conduct, and is tantamount to disbarment.

The purpose of lawyer discipline is not to punish the offender, but to deter others and protect the public. *In re Pappas*, 159 Ariz. 516, 768 P.2d 1161 (1988). The Commission believes the imposition of a lengthy three-year suspension will serve as a deterrent to other lawyers. In addition, Riches indicated at the hearing before the Commission that he does not have plans to return to the practice of law at this time. Should he wish to do so he will be subject to the reinstatement procedures of Rules 71 and 72, which require that an applicant demonstrate proof of rehabilitation. The State Bar has assured the Commission that, should Riches apply for reinstatement, the State Bar will strongly recommend that the reinstatement be accompanied by a two-year period of close monitoring. Therefore, the Commission does not believe a prospective suspension is necessary to protect the public, and agrees with the State Bar and the respondent that the suspension should be retroactive to November 27, 1991, the date

Riches was placed on interim suspension with his consent.

RESPECTFULLY SUBMITTED this 14th day of March, 1994.

/s/ Steven L. Bossé

Steven L. Bossé, Chair
Disciplinary Commission